May it please the Court, Susan Freeman on behalf of the Travelers Indemnity Company. The issue here is whether a subrogation waiver in a construction contract prevents a suit against the subcontractor to assert breach of warranties, defective construction on the part of the insurer, the property insurer that's standing in the shoes of the owner to whom those warranties were given. The district court said that the subrogation waiver only applies to an owner's property insurance that's acquired after the construction is completed, because it said the term facility in that contract only means the project after it has been completed. But the contract language is really the same. Actually, facility is a defined term, is it not? The word facility is a defined term, but the parties dispute the intent of that definition, because the definition is to construct, finance, and provide a multipurpose stadium facility, the purpose of which will be to accommodate these sports events. And the district court said that meant only the facility after it was completed, despite the words to construct the facility. Well, there are other words that are used to talk about the creation of that facility. One is the term work, and the other is the term project. That's accurate, Your Honor. The term work is defined as design and construction services necessary to construct a fully equipped and operational facility. Again, fully equipped and operational implies that describes facility at the point that it is fully equipped and operational. And project is the design and furnishing of, again, the fully equipped and operational facility, effectively the process. So why doesn't that, just looking at it, take, you know, you're coming as travelers, coming into this after completion, and you see this, I assume that you, the travelers, would have had these documents and seen the subrogation clause. Why wouldn't travelers, which, you know, has no trouble deciding how to write up coverage and limits of coverage and exclusions and so on, have flagged the subrogation clause and written it into the policy? You could have decided if subrogation arguably was precluded, then don't insure them or make a provision for it. But I have a little trouble second-guessing the careful analysis of the district court when he's parsing the language. And facility seems to me, at least it's a completed project, and this is when the damage occurred. And, you know, you go back to attempt to hold the parties to the subrogation clause. There are several reasons, Your Honor. First, I would ask the court to look at our reply brief page. It's pages 7 to 10, where we recite multiple instances in which the term facility necessarily applies to pre-substantial completion, where it says things like 11.4.1 of the design-build contract has its own subrogation clause. Is that not right? 11.4.1 expressly provides for the general builder's insurance to apply only to the period before substantial completion. Correct. And it has a provision that provides for a waiver of subrogation as to that period. Yes. All right. Okay. But that's important. Just a minute. So then you go to the provision that's at stake here more directly, and that is 11.4.6. Yes, Your Honor. Right. And it applies to adjacent properties and policies purchased for the facility. Right? Correct, Your Honor. So it seems to be covering – on your theory, it's redundant? No, Your Honor, not at all. Why? The point is that this is part of 11.4. 11.4 is applying to property insurance for the period of construction. Okay. The only owner's property insurance. But they already said that there's a subrogation, and you're saying that this is just repetitive? I don't know. That it's for the period before substantial completion. Right. During the construction period. But 11.4.1 already said that. 11.4.1 says that with respect to the particular general builder's coverage. This section applies to all of the property insurance that's referenced in this contract. And the only property insurance that is owner's property insurance is in 11.4.8. It's addressing the fact that under this particular contract, there would be a phased facility before the entire stadium is completed. And during that period of time, 5.4 says that there would be an agreement for the owner to get some property insurance, and that is loss-of-use insurance, expressly addressed in 11.4.8. Our insurance was not loss-of-use insurance. This is only during the period of construction, as one can tell by the fact that if you're going to rebuild any portion of this office that has been injured by fire or damaged by fire or by any other thing during the course of this construction, then you have to get a change order. This is the only owner's property insurance that's addressed here. And this, in this particular context of the property insurance in the contract, it's dealing with the pre-substantial completion because that's really the only purpose of a separation waiver. The only purpose for having the kind of coverage that is addressed here. The purpose of a separation waiver in a construction contract is not to deal with forever after. There's no intentional relinquishment of a known right on the part of the property owner to say, I know that I will never be able to get property insurance and be able to enforce my breach of warranty claims that are expressly given to me in this property insurance. The court is putting on the term facility an awful lot of weight. And facility in this context means the pre-substantial completion facility, as you can tell by the repeated instances where it does refer to pre-substantial completion. The ones that we've addressed in sections in pages 7 through 10 of our reply brief. Over and over it says things like you are performing work on the facility. That necessarily means before it's substantially completed. It cannot mean, as the district court said, it only applies after substantial completion. If it only applied after substantial completion, then the whole point of this kind of coverage is moot. The whole point of, I'm sorry, this kind of coverage of a subrogation waiver is moot. The whole point of a subrogation waiver is that during the course of construction you're not going to have fights and litigation among the parties. They're not each going to have to get their own insurance because somebody's going to be suing you. Somebody's going to be suing you. Instead, during the course of this completion, you're not going to be able to do that. Under the district court's word, that doesn't apply at all. But they still all have to get insurance for the post-construction period. For the post-construction period, yes. And the contract's providing that they can get their own insurance for the post-construction period. As Judge Fisher initially observed, Travis could have protected itself against this with its own post. But Travelers would have no way of knowing, first, Travelers would not know that the term facility in this instance means its own post-construction. But more generally, more generally, the parties, excuse me, the parties throughout this contract contemplate that if you have to get the approval of the insurance company to have a subrogation clause, which I would have thought you would, I find it sort of amazing that you can have a subrogation clause that waives the insurance rights, but if you had a requirement that you had to get approval, then they would have had to get the approval, but you don't have that requirement in your policy. The Travelers policy does not require that any subrogation waiver has to be approved by Travelers. Your Honor, to the contrary. The Travelers policy expressly does say that the insured can waive its own coverage, but it does not say, it does not authorize the insured to waive the company's coverage, and the company is the one defined here. But it seems to say, but they can waive the rights, and who knows what that means. But you're not relying on that. You could be relying on that, but you're not. No, we are. We do have our second argument here is that Arizona law would not permit the company, the insured, to waive Travelers' rights. That's a different argument. That's not based on your own policy. The only response to that argument, that Arizona law would not permit the company, the insured, to waive Travelers' rights, is that, in fact, there was such a waiver. And if you look at the Travelers policy, it does not have such a waiver. It only allows the insured to waive its own rights, but does not allow the insured to waive Travelers' rights. Now, I think the important thing here is that we're looking at Arizona law, and Arizona law says, especially in the Taylor case, that if you can interpret the policy reasonably to our interpretation, if it is reasonably susceptible at all to our interpretation, then this case could not be dismissed on a motion to dismiss. Instead, the interpretation needs to go to the jury. This is like the Phoebus case, where there are multiple interpretations. The facility can mean pre-substantial completion. It could mean post-substantial completion. It could mean everything. But because it has multiple potential interpretations under the Taylor case, under the Travelers, under the Phoebus case, the court has to look and see, is it reasonably susceptible to ours? If the fact is that it is reasonably susceptible because it can be interpreted in this section of the contract to mean only pre-substantial completion when the whole purpose of this kind of separation waiver applies, if it could mean that in this context, then it's reasonably susceptible to our interpretation, and we would be entitled to go to the jury. The court in Taylor set the standard for whether it's reasonably susceptible or not by saying, if it is the equivalent of white is black and the dollar is 50 cents, then it's not. But we meet that bar. I mean, we have the multiple instances in which facility means pre-substantial completion. Importantly, in this contract, in this contract where the parties intended a provision to survive, then it said so. If you look to 2.2.20, it says the provisions in Article II shall survive the completion, suspension, or termination of this agreement. Our contract does not say that for post-substantial completion property insurance. I'd like to reserve the remainder of my time for rebuttal, and if the Court has questions.  Thank you. May it please the Court. Denise Walkles for Appley Crown Court. Let me jump in and respond to the argument about whether the insured, the stadium owner, can waive the right of a property insurer. And our district court judge cited to Monterey Homes, Arizona, for this point, in which the Arizona court of appeals said at Headnote 4, accordingly, if the insured, that would be the stadium owner, releases its claims against the third party, that would be my client, subcontractor, Crown Court, even without the insurer's consent Well, it didn't release its claim. I'm sorry? It did not release its claim. I mean, there's a lot of confusion here between waiving the insurer's rights and waiving the right to separation. I mean, my understanding is that they were not waiving their right to eat in the they waived. So if, for example, the insurance company, for one reason or another, had not covered this, were they waiving their right? That's what Arizona law says. That's what the rest of the sentence says. And I'm reading Monterey Homes, 212 P. 3rd, 43 at page 47, Headnote 4. Even if the insured, that's the facility owner in our case, releases its claims against the third party, and here there was releases of claims against subcontractors by the owner, even without the insurer's, that's Traveler's, consent, the insurer will be barred from asserting that claim against the third party by way of separation. Okay. They waived their rights. But this is, as my understanding, is a waiver of separation rights, but not necessarily a waiver of their right to sue the third party. And, Your Honor, I think if you have the time to read this a little more carefully, that's what the Arizona Court of Appeals is saying in Monterey Homes is that because separation is a remedy where the insurance company is standing in the shoes of its insured, if the insured has waived its rights, then there's no ability to proceed. But has the insured waived its rights here? Yes. Where? If you would go to paragraph 11.2.5 of Article 11, Article 11 of the Design-Build Agreement is entitled Indemnity, Insurance, and Waiver of Segregation. And so it is a collection of provisions relating to also to liability insurance. And at 11.2.5, as we argued to the trial judge, there is an extensive release provision. The first probably two-thirds of 11.2.5, the contractors are waiving and releasing claims against the owner, the team. And then if you go down about two-thirds of the way, there's a aid. To the extent that it was paid by insurance policy, which is what I asked you to begin with. But they're not waiving it to the extent it isn't covered by insurance policy. Yes. And that's an important point to understand, is that it is because there is insurance that took care of the loss, and because Travelers is suing for insurance payments that it made under a policy, that is the reason why there is a released claim and no ability for Travelers to proceed, because then they were not waiving their own rights, except to the degree it was covered by insurance. Therefore, the section read in Monterey doesn't give you that. The owner was agreeing, as one of the released parties, that as to subcontractors, they would release any claims as to any other insurance policy otherwise available to the released party, which this Travelers policy is such a policy, available to the owner to take care of the claim. Article 11 really sets out an understanding that if there is insurance, these parties are waiving their rights against each other under different circumstances. If there was, you know, the owner noticed something wrong with, that something wasn't working in the stadium, they certainly have their own warranty rights and other rights, but not to the extent that there is an insurance policy that covers and has paid for the loss. There is, because this is a custom contract, it's not one of the form AIA contracts that was discussed in quite a number of cases that held that post-construction losses, waivers of subrogation could apply to post-construction losses. There's a whole series of cases that decided that point, though, with different language, and those cases are probably usefully collected in the Phoebus case that opposing counsel referred to. The Phoebus case, I wanted to note, was affirmed by the Maryland Court of Appeals in the Mattingly v. Hartford decision in the 1980s. Ginsburg. Can I quickly go back to this contract, please, to this agreement? Yes. All right. You were just reading from 11.2.5, which is under liability insurance. This is not a liability insurance issue, right? It's a property insurance issue. That's 11.4. So then we go to what I thought was the main provision in this case, which is 11.4.6. Is that right? Yes, Your Honor. Okay. So the one you were reading us before is not really relevant. I disagree with that. We did argue that this release provision is a second provision in the contract that prevents travelers from suing my client, a subcontractor. So in other words, although it's under the heading liability insurance, that's not what it's about? I would not read the heading to limit the scope of the release, and my understanding in reading of it would not. To go to 11.4.6, which is what I thought all the argument was about, if this means what you say it means, then there is a, with regard to the property owner, a separation waiver for adjacent properties and for the facility, which means after the facility is built, but not during the period, not for the project itself during the period it's covered. I believe that's true because the policy that was in place during the project, paid for by the design builder and covered under 11.4.1, the contract required the insurance policy itself to have a waiver of subrogation provision in it and also required that the design builder make sure that its contracts with the subcontractors would further that waiver of subrogation provision. And that's the reason why 11.4.6 has to mean something other than the project while it was under construction. There has been great emphasis by Travelers on the Phoebus case, and I think the Phoebus case has got probably the only discussion in it that really relates to the issue that this Court has before it, and that would be found in Head Note 8 of the Phoebus decision. It decided that the term work for its purposes was ambiguous, but it went on to say that, and by way of background, the contract, this was an Arby's restaurant, and the contract defined project as the restaurant. So the project in the Phoebus case had a meaning similar to the word facility in the design build contract before this Court. And the Phoebus Court said, if that phrase was meant to have the broadest meaning so as to exclude property insurance covering the completed restaurant with no time limitation, the word project, rather than the word work, would have been used. Project is clearly defined in the contract to mean the restaurant with no time limitation. Property insurance applicable to the project plainly would have meant such insurance on the restaurant after completion. And I believe that this Court has before it the very circumstance that the Phoebus Court addressed itself to in Head Note 8. One other point that I wanted to get to, I believe that this Court can dispose of the entire case based upon the contract language. If there's no subrogation, there's no subrogation for contract claims or for the negligence claims. There was a lot of briefing on a new decision in Arizona that I really don't believe that this Court would need to deal with, because the contract language at issue takes care of both contract and tort claims. For some unknown reason, when we filed our motion to dismiss, we argued that the design-build agreement and the subcontract language took care of all of the claims. The district court's opinion, although he doesn't say anything about it, he analyzes just the contract claims under the design-build agreement language and then goes on to separately analyze the tort claim under the economic loss rule, which is a rule that we think has been changed by subsequent authority. But I don't believe that that's an issue that this Court would need to reach, because if there's a waiver of subrogation, it's a subrogation no matter what theory it's brought on. If there's a release, all that matters is that there's insurance money to pay for it. It doesn't matter if it's brought as a contract claim or a tort claim. So we do not believe that the Court would need to look at the Sullivan case and the change in Arizona law, that that would not be, regardless, actually, of how you decide this case, probably not be something that you would need to look at. And so for that reason, I won't offer any comments. And I think through your questions and comments, you've already covered everything that I wanted to bring to the Court's attention. So thank you very much. Thank you, Counsel. Ms. Bobb. Several things briefly, Your Honor. In Monterey, the parties released claims against each other. They were not waiving the insurance company's rights. Number two, when the contract provisions are intended to survive, they expressly say so. This contract does not have AIA kind of language about completed property insurance that would apply after final payment on the completed project. What we have here is the word facility. That means in multiple instances pre-substantial completion, and thus it is reasonably susceptible to our interpretation of the contract. And when you have that, it's enough to have the jury go back and decide the meaning. What about the last point, the economic loss rule? Why doesn't the separation clause apply to that? Number one, Your Honor, that issue was waived because it was never argued here. Counsel only argued as to uphold what the district court said, which was to reimburse. Okay. But it would be fairly futile for us to remand it if the result is that it's covered anyway. No, Your Honor. It would not be futile because the district court may well decide differently. But in fact why? Why would it decide differently? The only case that has been presented, which was presented without authorization of this Court in the supplemental brief to say that the subrogation language would apply, was an equitable subrogation case. It was not a contract subrogation case. No authority has been presented with respect to that argument. But if it's a contractual subrogation case, assuming for the sake of argument that the waiver holds, why doesn't that cover torts as well as? Because it only applies, number one, that way. Subrogation is subrogation. Subrogation is subrogation, but subrogation is based on contract claims, claims that were under this particular contract. And here we have the separate tort claim, which under Arizona law you have the right to pursue wholly apart from this. Wholly apart from whatever contract you have, if you are within the scope of duty to protect this particular person here, the property owner and the insurer of the property owner, thereafter, then under Arizona. It's not brought under the contract, but the question is whether the subrogation clause in the contract, if it otherwise applies, applies to that kind of a claim. And the question is why not? Because, number one, there is absolutely no authority to do such a thing, to say that this particular subrogation waiver would apply ever to all kinds of claims, all kinds of torts. It was only addressed here to the kinds of contract claims that were at issue during the course of construction. It was only applied to the tort facility.  But if it was a case of preconstruction, someone had called, had brought a property-based tort case, it wouldn't have been subrogated. It wouldn't have been covered by the subrogation clause, I'm sorry. Or the waivers. In other words, all they were waiving was contract claims. It didn't say that. It didn't say all of it. No, Your Honor. It did not say that. It was focused, this was focused on the preconstruction period, which was the whole intent of the subrogation waiver. It was not addressed. Okay. But during that period, you were waiving tort as well as contract claims. That's correct, Your Honor. So why would it be any different afterwards if it otherwise applies? Your Honor, I don't have an answer for that other than there has been absolutely no authority to support such a waiver afterwards. The only case, the only Arizona case that was presented to support that was an equitable subrogation, not a subrogation provision like this. And there is a scope of duty that is clearly recognized under Arizona law. Well, I don't think we're quarreling about that. The question is whether you can, whether the waiver was sufficient, as if we assume it applies after completion, to the waiver is limited to contract claims. I don't see any language that would indicate that it is. And subrogation, you stand in the right, you stand in the shoes of the person from whom the subrogate, and that would apply to contract torts, any of the claims, right? And when it is going to do that. Just a second. So if you waive that, I don't understand your argument that you are only waiving part of it. Your Honor, I guess I would go back to focus you on the point that the term facility in this context is a really interesting point. I understand your argument on that. But I'm just saying, I'm trying to address, understand your argument that even assuming if we take the district court's definition of facility, that somehow there is a difference between the rights afforded in subrogation under contract theory and negligence theory. And, Your Honor, I guess I would put it another way. If you release all claims, it's all claims. Right. I do understand the point that the Court is making. This is a question. I'm trying to understand your position. It is something that was never briefed, was never argued, and we have not had an opportunity to research it and brief it and present it to this Court. So if this Court is inclined to address that kind of an issue, we would respectfully request the opportunity to brief it so that we would be able to show you what Arizona law provides in that regard, because it has been waived. It's not before the Court. If the Court is going to take off something new and suggest that this clearly pre-construction waiver applies, we would ask it. No, the question is, if we get that far on the economic law, I mean, I have to confess, I was a little bit at a loss why the district court was even getting into the economic law because I concluded, you know, a waiver is a waiver. Claim is a claim. It doesn't matter whether it's negligence or tort. I mean, or tort or contract. Right. But, Your Honor, that is what the district court did, and what the district court did may well be different if the district court has an opportunity to consider full briefing on it, which it didn't have and you don't have and we don't have. No. Well, we can ask for supplemental briefing. It's a question of law. It just doesn't seem arguable. I mean, you haven't even come up with any reason why it's arguable. And, Your Honor, that is because it was not before this Court and was not before  And so I don't understand that. But, I mean, there's a conceptual problem here, which if there – if you have no response to it at all, we can ask for supplemental briefing, but why bother the district court with it when there's, at least on first blush, just no conceivable answer? Because this provision was only intended to deal with the whole briefing. Nothing was intended to address the lack. But that's a different issue. Yes. That is a different issue. And that is really the primary issue before this Court. Right, right. But the reason we parse these different questions is not because we've lost sight of your initial argument, because we're trying to figure out a different aspect of the case. So, I think your point is you don't have an answer today and, you know, you'd like some time to research it. Is that right? That's correct, Your Honor, if you get to that point. Yes, exactly. Because what the district court did is clearly reversible and they've conceded that under Sullivan. With the Sullivan case, though, we're not that far. Can I ask you one last question? Yes. I don't quite understand your response to why the appropriate way to read the designer-builder agreement is to read 11.4.1 as dealing with the subrogations with regard to the design builder and all of the subcontractors during the project, and therefore, the other provision must be talking about something else. No, Your Honor. Perhaps I'm not being clear. I understand. I just would like to know why. Why is that? No. We're saying all of 11.4 is dealing with the pre-substantial completion period. That's the whole point. But then 11.4.6 is redundant. No, it is not. Your Honor, because 11.4.6 deals not just with the specific design-builder shall procure and maintain that's in 11.4.1. It's also dealing with 11.4.8, which is the owner. Well, but the subrogation clause there is not limited, as I understood it, to the design-builder. It says, let's see if I can find it. It says such policy should include a – it says it's supposed to maintain a policy for the design-builders or the subcontractors. It's supposed to cover all the subcontractors. Right. And it is saying such policy referring to the design-builder shall procure and maintain. So the design-builder is procuring and maintaining the builder's risk insurance.  And then 11.4.8 deals with the owner's insurance that it can obtain for loss of use during the period of construction when there would be – But you're not suing the owner. It's the owner who's suing. That's correct. Right. The owner is the one that's suing. But 11.4.6, we would suggest, deals with all of 11.4. It's not redundant because 11.4.1 is dealing with the builder's risk. 11.4.6 is dealing with any – But it's redundant as implied to this problem, because this is not suing the owner. It's suing the subcontractor. Correct. Who would be covered by the subrogation clause in 11.4.1 if it were limited to the period of the work. No. I mean, this 11.4.1 is that the builder is getting the builder's risk to cover what the subcontractor does.  And also to have a subrogation clause with – to have a waiver of subrogation with regard to that whole – everything that has to do with the contractors and subcontractors during the project. No? With respect to this particular insurance policy, the design builder's builder's risk policy. Right. But there is the possibility of another policy in here. And that is in 11.4.8. But it's not the one that we're – but we're not dealing with a policy covering the owner here. But that's exactly what they are arguing. They are saying that the owner's policy, the one that was acquired by Travelers, is caught up in this. And this is dealing with the builder's risk policy and not ours. All right. And that's where ours – the only possibility is it's under 11.4.8, and it's not. Because our policy is not for loss of use during the period of construction. Ours doesn't cover loss of use at all. It covers property damage for the period post-construction. It's not this 11.4.8 coverage. The 11.4.6 is very ambiguous. Okay. If you're saying 11.4 is only pre-construction, what is post-construction in this agreement? Nothing? This – when this agreement applies to post-construction, it says so like in 2.2.20 when it says it will apply, it shall survive the completion, suspension, or termination of this agreement. It doesn't. It talks about during this agreement, which is the whole point of this kind of construction. And if the district court is right that it only applies post-completion, then it doesn't have any meaning during the whole period, which is the point of this coverage. The whole point doesn't make sense if this doesn't even apply during the period of construction, which is what the district court found. The district court was flatly wrong in saying it can only apply post-construction, post-completion. Thank you, counsel. Thank you. The case is currently submitted for decision.
judges: Thomas, Fisher, Berzon